[Cite as *Twymon v. Eagle Auto Parts, Inc.*, 2022-Ohio-2360.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| MICKEY TWYMON, | : | |
| Plaintiff-Appellee, | : | No. 110993 |
| v. | : | |
| EAGLE AUTO PARTS, INC., ET AL., | : | |
| Defendants-Appellants. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED, VACATED, AND REMANDED
**RELEASED AND JOURNALIZED:** July 7, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-931093

### *Appearances:*

Joseph B. Rose, III, *for appellee.*

Yelsky & Lonardo, LLC, and Mitchell J. Yelsky, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} In this accelerated appeal, defendant-appellant Eagle Auto Parts, Inc. ("Eagle Auto Parts") appeals from the trial court's order denying its motion to vacate default judgment entered in favor of plaintiff-appellee Mickey Twymon. For the

reasons that follow, we reverse the trial court's decision, vacate the default judgment and remand the case for further proceedings.

**Procedural and Factual Background**

{¶ 2} On March 18, 2020, Twymon filed a complaint in the Cuyahoga County Court of Common Pleas against Eagle Auto Parts and a John Doe defendant (collectively, the "defendants"),[1] alleging that nearly two years earlier, on March 22, 2018, Twymon had been bitten by a pit bull while attempting to purchase auto parts at Eagle Auto Parts' facility at 4063 East 116th Street in Cleveland. Twymon asserted claims of negligence, gross negligence, intentional infliction of emotional distress and violation of Ohio's dog bite statute, R.C. 955.28, against the defendants.

{¶ 3} In his complaint, Twymon alleged that "while in the process of purchasing auto parts," he had been directed by "one of [Eagle Auto Parts'] agents" to accompany an employee to a storage building to select the auto parts. He further alleged that while he was inside the building he was, "without provocation," "viciously and violently attacked by Defendants' Pitbull," causing "puncture wounds and bite marks to his leg." Tymon further alleged that an Eagle Auto Parts employee witnessed the attack and that employees informed Twymon "on scene" that the dog should have been secured in its cage at the rear of the facility at the time it attacked Twymon. Twymon also alleged that the defendants knew of the dog's "viciousness"

---

[1] Twymon described the John Doe defendant as the "owner, harborer, and/or keeper" of the pit bull.

and that they breached a duty owed to him by keeping the dog in a "reckless and/or negligent manner."

**{¶ 4}** The incident was reported as an "animal bite" to the Cleveland Department of Public Safety, Division of Animal Care & Control ("Animal Control").[2] Following the incident, Twymon sought medical treatment in the emergency room at University Hospitals' Cleveland Medical Center. There is no information in the record as to what medical treatment he received, other than that he was prescribed Amoxicillin-Clavulanate tablets.

**{¶ 5}** As a result of the incident, Twymon claimed to have sustained "injuries, which have caused pain and suffering, and, upon information and belief, will continue to cause pain and suffering into the future and upon a permanent basis" as well as "serious emotional distress" and unspecified "economic and noneconomic damages." For his injuries and other damages, Twymon sought to recover compensatory damages in excess of $25,000, punitive damages, attorney fees and his "costs and expenses."

**{¶ 6}** The caption of Twymon's complaint listed two addresses for Eagle Auto Parts: (1) Eagle Auto Parts, Inc., 4063 East 116th Street, Cleveland, Ohio 44105, and (2) Eagle Auto Parts, Inc., "c/o Statutory Agent: Diane A. Calta," 1360 SOM Center Road, Cleveland, OH 44124. On March 23, 2020, the clerk for the

---

[2] There is no information in the record as to what happened after the incident was reported to Animal Control, including whether there was any investigation or follow up by Animal Control, whether Animal Control took possession of the dog, whether Eagle Auto Parts was cited or what happened to the dog after the incident.

Cuyahoga County Court of Common Pleas sent a summons and complaint, via certified mail return receipt requested, to (1) Eagle Auto Parts at 4063 East 116th Street, Cleveland, Ohio 44105 and (2) Eagle Auto Parts, "c/o s/a: Diane A Calta," 1360 SOM Center Rd., Cleveland, Ohio 44124. 1360 SOM Center Road is the address of the offices of Diemert & Associates Co., L.P.A. (the "Diemert law firm"). At the time she was appointed Eagle Auto Parts' statutory agent in 2008, Calta was employed by, or otherwise associated with, the Diemert law firm.

{¶ 7} A return receipt was received for the summons and complaint sent via certified mail in care of Calta, indicating that it was "delivered on 03/26/2020 at 12:28 p.m. in Cleveland, Ohio 44124." It is unknown who signed the certified mail delivery receipt. The "signature" on the return receipt is little more than a scribble. The return receipt was entered on the trial court's docket on April 1, 2020. The trial court's docket indicates that the summons and complaint sent via certified mail to Eagle Auto Parts at 4063 East 116th Street was returned "unclaimed" on April 14, 2020 and as "attempted — not known unable to forward" on April 22, 2020. [3]

{¶ 8} Eagle Auto Parts did not file an answer or otherwise enter an appearance in the case.

---

[3] In considering the relevant facts and circumstances of this case, we are mindful that service of the summons and complaint on Calta at 1360 SOM Center Road and the attempted service of the summons and complaint on Eagle Auto Parts directly at 4063 East 116th Street occurred shortly after the issuance of Ohio's COVID 19 stay-at-home order, which became effective on March 23, 2020 at 11:59 p.m. and mandated that all individuals stay at home unless engaged in essential work or activity.

{¶ 9} On July 21, 2020, Twymon filed a motion for default judgment pursuant to Civ.R. 55(A). In his default motion, Twymon asserted that Eagle Auto Parts had been served with the summons and complaint via certified mail on April 1, 2020 and that Eagle Auto Parts was, therefore, required to file an answer or otherwise plead on or before April 29, 2020,[4] but had failed to do so. Twymon requested that the trial court enter a default judgment against Eagle Auto Parts and that the matter be set for trial for a determination of damages.

{¶ 10} Twymon's certificate of service for the motion for default indicates that Twymon sent a copy of the motion to Eagle Auto Parts, via certified mail, return receipt requested, in care of "S/A Diane A. Calta" at 1360 SOM Center Road, Cleveland, OH 44124. Twymon did not send a copy of the motion directly to Eagle Auto Parts at 4063 East 116th Street, the other address listed for Eagle Auto Parts in the complaint. There is no return receipt in the record for the copy of the motion sent to Calta.

{¶ 11} On July 21, 2020, the trial court issued an order scheduling a telephonic default hearing for September 1, 2020. The trial court ordered Twymon's counsel to inform "all opposing counsel and unrepresented parties," via certified mail, of the date, time and court phone number for the hearing, at least seven days

---

[4] This is not, in fact, correct. Due to the Ohio Supreme Court's tolling order related to the COVID-19 pandemic, Eagle Auto Parts' answer was not yet due at the time Twymon filed his motion for default judgment. Because the emergency period was in effect when Eagle Auto Parts was served, Eagle Auto Parts would have had 28 days after the tolling period ended to file an answer, i.e., 28 days after July 30, 2020. *See In re Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Court & Use of Tech.*, 158 Ohio St.3d 1447, 2020-Ohio-1166, 141 N.E.3d 974.

prior to the hearing. The trial court also ordered that Twymon file, at least five days prior to the hearing (1) an affidavit of damages and military service, (2) a proposed judgment entry and (3) a copy of the letter Twymon's counsel sent to the defendant notifying it of the default hearing.

{¶ 12} The default hearing was continued three times at Twymon's request. In each of his motions for continuance, Twymon asserted that although a "concerted effort has been made by counsel to obtain all relevant records from University Hospital[s] regarding Mr. Twymon's treatment as a result of his injuries, he has been unable to do so and hereby requests additional time." The certificate of service for each motion indicates that a copy of the motion was sent to Eagle Auto Parts, via "USPS mail," in care of "S/A Diane A. Calta" at 1360 SOM Center Road, Cleveland, OH 44124. Copies of the motions were not sent to Eagle Auto Parts directly. There is no evidence in the record as to what happened to these motions after they were sent to 1360 SOM Center Road. The default hearing was ultimately rescheduled for December 17, 2020.

{¶ 13} There is nothing in the record that indicates that any of the trial court's July 21, 2020, September 14, 2020, October 15, 2020 or November 19, 2020 orders scheduling (or rescheduling) the default hearing were sent to Eagle Auto Parts (either in care of Calta or directly). The trial court's docket reflects only that the orders were sent to Twymon or his counsel via "e-filing service email."

{¶ 14} On December 11, 2020, Twymon filed a copy of a letter, dated December 8, 2020, advising Eagle Auto Parts of the date, time and telephone

number for the default hearing on December 17, 2020. The letter indicates that it had been sent via certified mail, return receipt requested, to Eagle Auto Parts in care of "S/A Diane A. Calta" at 1360 SOM Center Road, Cleveland, OH 44124. There is no return receipt in the record for the letter sent to Calta. Accordingly, it is unknown whether it was received at 1360 SOM Center Road.

{¶ 15} Twymon also filed an "affidavit of damages" in which he averred as follows:

1. I am the Plaintiff in the above captioned lawsuit which has been filed against the Defendant, Eagle Auto Parts, Inc.

2. I have reviewed the Complaint filed on my behalf by my attorney and declare that the allegations contained in the Complaint are true.

3. As a direct and proximate result of the dog bite, I was required to obtain medical treatment to my leg at University Hospitals, the cost of said services is nine hundred thirty dollars ($930.00) * * * and Walgreens Pharmacy, the cost of which is twenty-one dollars and two cents ($21.02) * * *.

4. I suffered great pain and discomfort as a result of such injuries and to date, a scar remains where I was viciously bitten. For such pain and suffering, both physically and mentally, I have incurred damages in the amount of ten thousand dollars ($10,000.00).

5. I was further damaged to the extent, that in that I was born and raised in Alabama, I had planned to drive there to be with my family on Easter but was unable to do so due to my injuries.

6. To be fully compensated for the injuries inflicted by the Defendant I seek the amount of twenty-five thousand dollars ($25,000.00) and my costs.

Copies of an invoice from University Hospitals Cleveland Medical Center (the "UH invoice") and a receipt from Walgreens pharmacy (the "Walgreens receipt") were

attached to the affidavit. The UH invoice listed charges of $930.00 for "Emergency Department E&M Level 3" and $3.22 for Amoxicillin-Clavulanate tablets, with a $0.00 balance following receipt of "Veterans Admin Hlth Insurance" payments or adjustments. The Walgreens receipt reflected a charge of $21.02 for 14 Amoxicillin-Clavulanate tablets.

{¶ 16} Twymon's affidavit was the sole evidence presented in support of his claimed damages. Although Twymon's counsel had thrice asserted that additional time was needed for the default hearing to obtain "all relevant records from University Hospital[s] regarding Mr. Twymon's treatment as a result of his injuries," no medical records were submitted in support of his injury claim.

{¶ 17} Following the default hearing,[5] the trial court granted Twymon's motion for default judgment and entered judgment in his favor in the amount of $25,000. In its December 17, 2020 judgment entry, the trial court stated, in relevant part:

> This matter came before the court for consideration on 12/17/2020 upon Mick[e]y Twymon's complaint filed March 18, 2020, defendant Eagle Auto Parts, Inc. being in default of an answer or other pleading in response to said complaint.
>
> Upon review of plaintiff's complaint, plaintiff's affidavit of damages with exhibits and a copy of the written communication to defendant from plaintiff, dated December 8, 2020 setting forth the date and time of the hearing, the court finds that the allegations set forth in plaintiff's complaint are well taken and as a result, plaintiff has sustained damages and for good cause it is:

---

[5] No transcript from the default hearing is in the record. During oral argument, counsel stated that the default hearing was not an evidentiary hearing.

Therefore ordered, adjudged and decreed that there is due and owing to plaintiff Mickey Twymon from defendant Eagle Auto Parts, Inc. the sum of 25,000.00, to be paid forthwith.

{¶ 18} The trial court sent copies of the judgment entry, via regular mail, to Eagle Auto Parts at 4063 East 116th Street, Cleveland, Ohio 44105, and in care of "s/a: Diane A. Calta" at 1360 SOM Center Road, Cleveland, Ohio 44124. Eagle Auto Parts received the copy of the judgment entry sent to it at its 4063 East 116th Street address.

{¶ 19} On January 26, 2021, Eagle Auto Parts filed a motion to vacate the default judgment "in accordance with [Civ.R.] 60(B)(1) and (5)." Eagle Auto Parts contended that the default judgment should be vacated because (1) its motion was timely, (2) it had never been properly served with the complaint[6] and (3) it had a meritorious defense to the complaint.

{¶ 20} Eagle Auto Parts contended that it "was never properly served" with the complaint because (1) the address listed for Eagle Auto Parts in the complaint — 4063 East 116th Street, Cleveland, Ohio 44105 — was an auto parts storage warehouse that is not open to the public and not its principal place of business and

---

[6] Although Eagle Auto Parts filed its motion to vacate default judgment "in accordance with Civ.R. 60(B)(1) and (5)," we note that "a default judgment rendered by a court without obtaining proper service over the defendant is void." *Corrao v. Bennett*, 2020-Ohio-2822, 154 N.E.3d 558, ¶ 16 (8th Dist.), citing *Khatib v. Peters*, 2017-Ohio-95, 77 N.E.3d 461, ¶ 30 (8th Dist.). A party who asserts improper service does not need to meet the requirements of Civ.R. 60(B) because a court's authority to vacate a void judgment does not arise from Civ.R. 60(B); a court has inherent power to vacate a void judgment. *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph four of the syllabus; *Corrao* at ¶ 16; *King v. Water's Edge Condominium Unit Owners' Assn.*, 8th Dist. Cuyahoga No. 109895, 2021-Ohio-1717, ¶ 20; *see also* Staff Notes to Civ.R. 60(B).

(2) Calta had never notified Eagle Auto Parts of her "alleged receipt of [s]ervice of [p]rocess." Eagle Auto Parts also asserted that Calta's failure to notify Eagle Auto Parts of her alleged receipt of the complaint constituted sufficient "mistake, inadvertence, surprise or excusable neglect" to warrant vacating the default judgment under Civ.R. 60(B)(1) and that it had a meritorious defense to the complaint because Twymon was a trespasser and had entered its auto parts storage warehouse at 4063 East 116th Street "without any permission or authorization."

{¶ 21} In support of its motion, Eagle Auto Parts attached an affidavit from its general manager, Carmine Agnello. In his affidavit, Agnello averred that Eagle Auto Parts' principal place of business is located at 4060 East 116th Street, that service of process was never attempted at 4060 East 116th Street and that its facility located at 4063 East 116th Street is an auto parts storage warehouse that "does not receive mail" for Eagle Auto Parts. He further averred that "conspicuous" signs were posted at the entrance of the auto parts storage warehouse advising visitors to "Ring Bell For Part's [sic] Pick Up [sic]. Please Be Patient," warning visitors that there was a "GUARD DOG ON DUTY and instructing visitors that "ALL VISITORS MUST SIGN IN BEFORE ENTERING YARD" and that "ALL VISITORS MUST WEAR" a hard hat, safety glasses and high visibility vest or shirt. Agnello averred that, to his knowledge, Twymon never rang the bell for service, did not otherwise comply with the signs and was, therefore, a trespasser. Agnello attached photographs of the signs and "what someone would see upon entering the auto parts storage warehouse" as exhibits to his affidavit.

{¶ 22} With respect to service of the summons and complaint, Agnello averred:

> At no time did Eagle Auto Parts, Inc.'s statutory agent Diane [A.] Calta notify me, or anyone else from Eagle Auto Parts, Inc., that Ms. Calta was served with [the] Summons and Complaint. Upon [G]oogling Diane Calta's name, it appears to me that she is no longer employed as an Attorney-at-Law for the Diemert Law Firm, at 1360 SOM Center Road; and, at no time did anyone from Ms. Calta's former law office ever notify Eagle Auto Parts, Inc. that [s]he had been served with Summons and Complaint.

{¶ 23} Twymon opposed the motion, asserting that Calta (and thus Eagle Auto Parts) had been properly served with the summons and complaint in accordance with the Ohio Rules of Civil Procedure,[7] that Eagle Auto Parts had failed to rebut the presumption of proper service, that Eagle Auto Parts had failed to present evidence, including an affidavit from Calta, establishing "excusable neglect" or "any other reason justifying relief" under Civ.R. 60(B)(1) or (5) and that Eagle Auto Parts had failed to demonstrate a meritorious defense if relief were to be granted. In support of his opposition, Twymon submitted a photograph of Eagle Auto Parts' facility at 4063 East 116th Street and copies of certain business records from the Ohio Secretary of State's office, including the initial articles of

---

[7] Twymon also claimed that service was perfected on Eagle Auto Parts at its 4063 East 116th Street address "by ordinary mail, docketed by the clerk's office on April 1, 2020, after the certified mail went unclaimed." However, we see nothing in the record to support this. The only entry on the trial court's docket for April 1, 2020 references "USPS Receipt No. 41486439 [d]elivered by USPS 03/26/2020." USPS Receipt No. 41486439 is the certified mail receipt for the summons and complaint sent to 1360 SOM Center Road in care of Calta.

incorporation for Eagle Auto Parts, dated June 5, 2008, appointing Diane A. Calta, 1360 SOM Center Road, Cleveland Ohio 44124, as its statutory agent.

{¶ 24} On October 14, 2021, the trial court held a hearing on Eagle's motion to vacate default judgment.[8]  At the hearing, Eagle Auto Parts reiterated its arguments that the default judgment should be vacated because "service ha[d] not been perfected" and Eagle Auto Parts had a meritorious defense based on Twymon's status as a trespasser, his entry into a restricted area unaccompanied by any Eagle Auto Parts employee and his failure to heed the posted signs warning visitors of the presence of a guard dog on the premises.  Eagle Auto Parts also questioned the factual basis for the damages awarded Twymon, arguing that he had been improperly "awarded a windfall," and asserted that Eagle Auto Parts should have "an opportunity to inspect his medical records and to find out exactly whether or not his injuries are in line with the very large default judgment" he received.

{¶ 25} With respect to service of the complaint at 1360 SOM Center Road, Eagle Auto Parts' counsel asserted that Calta had "exited the practice of law without notifying [Eagle Auto Parts] that she was no longer on SOM Center," that the law office of out which she had previously worked or with which she had previously been associated had no forwarding information for her and that, considering the remedial purpose of Civ.R. 60(B) and the strong preference for deciding cases on their merits, Eagle Auto Parts "should not be held responsible" for Calta's "lack of meeting her

---

[8] The hearing was held by videoconference pursuant to the parties' agreement. Counsel for the parties and Agnello attended the hearing.

best practices" to notify Eagle Auto Parts that she was "leaving the practice of law" and that it needed to get a new statutory agent. Eagle Auto Parts maintained that the only document it had received in the case was a copy of the default judgment entry, which had been sent, by regular mail, to its auto parts storage warehouse at 4063 East 116th Street.

{¶ 26} Twymon responded that the docket clearly established that Calta, Eagle Auto Parts' statutory agent, was properly served with the summons and complaint on March 26, 2020, that Eagle Auto Parts had not presented any legal authority that a statutory agent's failure to notify a party of a received complaint warranted relief under Civ.R. 60(B) and that if Eagle Auto Parts wanted relief under Civ.R. 60(B)(1) or (5), it should have produced an affidavit from Calta confirming that (1) she did not notify Eagle Auto Parts of her receipt of the complaint and (2) explaining why she failed to notify Eagle Auto Parts of her receipt of the complaint. Twymon further asserted that he was a business invitee, not a trespasser, that Eagle Auto Parts did not dispute that its pit bull attacked Twymon and that, pursuant to R.C. 955.28(B), Eagle Auto Parts was liable for the injuries caused by the pit bull. Twymon did not address his damages award at the hearing on the motion to vacate.

{¶ 27} At the conclusion of the hearing, the trial court denied Eagle Auto Parts' motion to vacate the default judgment, stating:

[T]he Court is going the make the following findings:

I really can't find that service was improper. The evidence all points to the fact that the statutory agent was served. That in and of itself is proper service.

I suppose there is maybe some evidence of some kind of neglect in that Mr. Agnello claims he never received notice from the statutory agent, but * * * it is a little self-serving.

There's no information from the attorney, the attorney's office how it could be neglected or why it should be excused. It's got to be excusable neglect.

The meritorious defense may have some color of law. It is a little dubious with respect to whether or not there is a criminal trespass involved that would excuse the actions of the guard dog at that business.

Dog-bite cases are pretty strongly — the statute is written to protect the person bitten. That's why I asked you about some kind of criminal act that would excuse the dog's action. There mere status of someone on a business which may change is really not the same as a criminal trespass.

So there's not sufficient evidence here for me to grant the 60(B) motion. So at this point I am going to deny it.

{¶ 28} In its judgment entry, the trial court further explained its ruling as follows:

The court heard argument from counsel for both parties. * * * This court's docket reflects that service was perfected on defendant via its statutory agent on 03/26/2020. There was no evidence of excusable neglect on behalf of defendant's statutory agent. The evidence showed defendant's statutory agent was legally served and defendant failed to answer or otherwise respond to plaintiff's complaint. Accordingly, defendant's motion to vacate is denied and this court's December 17, 2020 judgment remains.

{¶ 29} Eagle Auto Parts appealed, raising the following two assignments of error for review:

Assignment of Error No. 1: The trial court abused its discretion and erred as a matter of law when it denied appellant Eagle Auto Parts, Inc.'s timely motion to vacate its December 17, 2020 default judgment.

Assignment of Error No. 2: The trial court abused its discretion and erred as a matter of law when it found there was no evidence of excusable neglect.

{¶ 30} Eagle Auto Parts' assignments of error are interrelated. Accordingly, we address them together.

**Law and Analysis**

{¶ 31} Civ.R. 55(B) states: "If a judgment by default has been entered, the court may set it aside in accordance with Rule 60(B)."[9] Civ.R. 60(B) provides, in relevant part: "On motion and upon such terms as are just," a trial court "may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:"

> (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 (B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

---

[9] As noted above, Civ.R. 60(B) "deals with vacation of voidable judgments." Staff Notes to Civ.R. 60(B). A court also has the inherent power to vacate a void judgment separate and apart from Civ.R. 60(B). *See, e.g., Patton*, 35 Ohio St.3d 68, 518 N.E.2d 941 at paragraph four of the syllabus; *King*, 2021-Ohio-1717, at ¶ 20; *Reliable Auto Fin., Inc. v. Kelly*, 10th Dist. Franklin No. 20AP-518, 2021-Ohio-2851, ¶ 13. The same abuse-of-discretion standard of review applies to rulings on common-law motions to vacate and Civ.R. 60(B) motions. *See, e.g., Midland Funding, L.L.C. v. Cherrier*, 8th Dist. Cuyahoga No. 108595, 2020-Ohio-3280, ¶ 13, 16; *Brookville Enters. v. Clarence J. Kessler Estate HCF Mgmt.*, 2d Dist. Montgomery No. 29314, 2022-Ohio-1420, ¶ 20; *Teeters v. Jeffries*, 12th Dist. Clermont No. CA2021-02-007, 2021-Ohio-2985, ¶ 16.

{¶ 32} Civ.R. 60(B) "'strikes a balance between the finality of judgments and a perfect result "by vesting the courts with broad, but not unlimited authority to set aside judgments."'" *Rodeno v. Mezenski*, 8th Dist. Cuyahoga No. 111030, 2022-Ohio-1176, ¶ 17, quoting *Ouellette v. Ouellette*, 2020-Ohio-705, 152 N.E.3d 528, ¶ 10 (6th Dist.), quoting *Knapp v. Knapp*, 24 Ohio St.3d 141, 145, 493 N.E.2d 1353 (1986). It is "a remedial rule to be liberally construed so that the ends of justice may be served." *Kay v. Marc Glassman*, 76 Ohio St.3d 18, 20, 665 N.E.2d 1102 (1996), citing *Colley v. Bazell*, 64 Ohio St.2d 243, 249, 416 N.E.2d 605 (1980).

{¶ 33} To prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the moving party must demonstrate that (1) the party has a meritorious defense or claim to present if the relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1)-(5) and (3) the motion is made within a reasonable time. *Internatl. Total Servs. v. Estate of Nichols*, 8th Dist. Cuyahoga No. 107751, 2019-Ohio-4572, ¶ 7, citing *GTE Automatic Elec. v. ARC Industries*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus.

{¶ 34} A party seeking relief under Civ.R. 60(B) is required to allege "operative facts" that support the claim, but "is not required to support its motion with evidentiary materials." *Kay* at 20-21. The moving party must allege operative facts with sufficient specificity so that the trial court can decide whether the moving party is entitled to relief. *Syed v. Poulos*, 8th Dist. Cuyahoga No. 99884, 2013-Ohio-5739, ¶ 10. "'Broad, conclusory statements do not satisfy the requirement that a Civ.R. 60(B) motion must be supported by operative facts that would warrant relief

from judgment.'" *Rodeno* at ¶ 35, quoting *Natl. Collegiate Student Loan Trust 2007-2 v. Tigner*, 2d Dist. Montgomery Nos. 27841 and 28035, 2018-Ohio-4442, ¶ 22; *see also Syed* at ¶ 10 ("Although a moving party is not required to submit evidentiary material in support of the motion, he or she must do more than make bare allegations of entitlement to relief.").

{¶ 35} We review a trial court's ruling on a Civ.R. 60(B) motion for abuse of discretion. *Internatl. Total Servs.* at ¶ 6, citing *Bank of N.Y. v. Elliot*, 8th Dist. Cuyahoga Nos. 97506 and 98179, 2012-Ohio-5285, ¶ 25. A trial court abuses its discretion where its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable when "no sound reasoning process" supports that decision. *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse of discretion also occurs when a court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Franciscan Communities, Inc. v. Rice*, 8th Dist. Cuyahoga No. 109889, 2021-Ohio-1729, ¶ 33, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶ 36} Here, there is no dispute that Eagle's motion to vacate, filed less than six weeks after the default judgment entry, was filed within a reasonable time. At issue is whether Eagle Auto Parts' motion and supporting materials set forth sufficient operative facts showing that (1) Eagle Auto Parts has a meritorious defense

and (2) Eagle Auto Parts is entitled to relief from judgment based on one of the grounds stated in Civ.R. 60(B).

**Meritorious Defense**

{¶ 37} Eagle Auto Parts argues that it showed it had a meritorious defense based on (1) Twymon's status as a trespasser at the time the dog bite occurred, i.e., that Twymon "never had a license, right, privilege or permission to enter [Eagle Auto Parts'] unmanned and unattended auto parts storage warehouse," and (2) the lack of evidence supporting Twymon's "exorbitant and excessive $25,000.00 default judgment arising from one emergency department encounter, with uninsured and unreimbursed medical expenses of $21.01."

{¶ 38} With respect to the meritorious defense requirement, "a movant's burden is only to allege a meritorious defense, not to prove that he will prevail on that defense." *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988). "'[T]he burden on the moving party is only to allege operative facts which would constitute a meritorious defense if found to be true.'" *Baker Motors, Inc. v. Baker Motors Towing, Inc.,* 183 Ohio App.3d 223, 228, 2009-Ohio-3294, 916 N.E.2d 853, ¶ 16 (8th Dist.), quoting *Fouts v. Weiss-Carson*, 77 Ohio App.3d 563, 565, 602 N.E.2d 1231 (11th Dist.1991); *see also Urban v. Folan*, 9th Dist. Summit No. 29826, 2021-Ohio-3452, ¶ 18 (To satisfy meritorious defense requirement, the moving party must "'allege supporting operative facts with enough specificity to allow the court to decide that the movant has a defense he could have successfully

argued at trial.'"), quoting *Climbing Higher Ent., Inc. v. Forney*, 9th Dist. Summit No. 21142, 2002-Ohio-6295, ¶ 13.

{¶ 39} In this case, we need not decide whether Twymon set forth sufficient operative facts to constitute a meritorious defense based on Twymon's status as a trespasser because apart from whether Twymon was a trespasser, Eagle Auto Parts showed that it had a meritorious defense based on the damages awarded to Twymon.

{¶ 40} "'In a tort action, or in any action for unliquidated damages, the default of the defendant does not admit the amount of the damages, and the plaintiff must prove his damages.'" *Baker v. Hope Moulding Co.*, 3d Dist. Hardin No. 6-81-10, 1982 Ohio App. LEXIS 15251, 10 (Mar. 25, 1982), quoting 47 American Jurisprudence 2d 206; *see also Brooks v. RKUK, Inc.*, 5th Dist. Stark No. 2021CA00048, 2022-Ohio-266, ¶ 54 ("'Ohio law requires the presentation of proof of damages for an unliquidated claim before any can be awarded.'"), quoting *Faulkner v. Integrated Servs. Network, Inc.*, 8th Dist. Cuyahoga Nos. 81877 and 83083, 2003-Ohio-6474, ¶ 26; *Berube v. Richardson*, 2017-Ohio-1367, 89 N.E.3d 85, ¶ 10 (8th Dist.) ("Generally, proof of damages is required for an unliquidated claim, such as a claim of negligence."), citing *Buckeye Supply Co. v. N.E. Drilling Co.*, 24 Ohio App.3d 134, 136, 493 N.E.2d 964 (9th Dist.1985).

{¶ 41} Civ.R. 55(A) states, in relevant part:

If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to

make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties.

{¶ 42} "Although trial courts have broad discretion under Civ.R. 55 to award damages by default based on affidavits in lieu of live testimony, default judgments are generally granted on unpaid accounts and breaches of contract where an amount of liquidated damages is easily ascertainable from the controlling documents." *Kaferle v. MKT Holdings, L.L.C.*, 8th Dist. Cuyahoga Nos. 105990 and 106620, 2018-Ohio-4208, ¶ 18-20. Where, however, "the plaintiff presents a claim for unliquidated damages * * * additional proof of damages is required." *Id.,* citing *Buckeye Supply* at 136.

{¶ 43} Once a right to damages has been established, that right cannot be denied because damages are incapable of being calculated with mathematical certainty. *See, e.g., Brooks*, 2022-Ohio-266, at ¶ 55. However, a plaintiff is not entitled to recover for, and a trial court may not award — even following a default — damages that are speculative or otherwise not supported in the record. *See, e.g., Barilla v. Keaton*, 9th Dist. Lorain No. 14CA010659, 2015-Ohio-1244, ¶ 6 ("Even if a defendant has failed to appear, the determination of damages in a tort action 'must be supported by evidence.'"), quoting *Molz v. Gearhart*, 4th Dist. Meigs No. 07CA16, 2009-Ohio-2824, ¶ 11.

{¶ 44} In this case, the trial court awarded Twymon a default judgment in the amount of $25,000. It did not hold an evidentiary hearing on the issue of damages; rather, it awarded Twymon $25,000 in damages based on two receipts

documenting an emergency room visit and a prescription for antibiotics and Twymon's cursory, conclusory affidavit. The only information Twymon provided in his affidavit regarding his injuries was that the dog bit one of his legs, that he still has a scar and that he "suffered great pain and discomfort," "mentally and physically," as a result of his injuries. No medical records or photographs documenting the extent of Twymon's injuries or the nature of the treatment he received were presented.

{¶ 45} Although in his affidavit Twymon claimed to have incurred only $954.24 in medical expenses ($933.22 of which had been paid by insurance) and a total of $10,000 for "pain and suffering, both physically and mentally," he requested $25,000 "[t]o be fully compensated for [his] injuries." The only other damage or loss Twymon claimed in his affidavit was the lost opportunity to spend Easter with family, i.e., Twymon claimed that he had planned to drive to Alabama to be with his family on Easter but that he was unable to do so due to his injuries. Twymon did not explain why his injuries from a dog bite on March 22, 2018 precluded him from driving him to Alabama to spend Easter with his family nearly two weeks later, and he did not claim any specific losses or expenses attributable to that missed trip in his damages affidavit or complaint.

{¶ 46} There is insufficient evidence in the record to support the trial court's $25,000 damages award. Accordingly, Eagle Auto Parts presented sufficient operative facts showing that it had a meritorious defense based on the excessive damages awarded Twymon. *See, e.g., Atkinson v. White*, 2d Dist. Montgomery No.

18253, 2000 Ohio App. LEXIS 5664, 8 (Dec. 1, 2000) ("To the extent that [plaintiffs] have not presented evidence in support of their alleged damages, Civ.R. 60(B) was an appropriate means for challenging the amount of the trial court's award, and [defendants] had a meritorious defense to present regarding damages, insofar as the trial court was obliged, but apparently did not, require [plaintiffs] to prove their actual damages."); *cf. Whittle v. Davis*, 12th Dist. Butler No. CA2012-08-169, 2013-Ohio-1950, ¶ 18-20 (trial court abused its discretion in awarding damages on default judgment without a hearing where, although plaintiff submitted an affidavit in support of the damages, the affidavit failed to provide sufficient details to support the damages award); *Kaferle*, 2018-Ohio-4208, at ¶ 18-20 (trial court abused its discretion in awarding default judgment in the amount of $458,413.78 on wrongful death claim without a hearing; although affidavits submitted in support of damages "describe[d] a few aspects of [the decedent's] last few hours of life," they were "deficient in detail" and "provide[d] only broad, conclusory statements regarding his pain and suffering and the plaintiffs' loss of companionship and mental anguish"; "[s]uch evidence is not sufficient to support an award of almost half a million dollars").

**Excusable Neglect**

{¶ 47} In its motion to vacate default judgment, Eagle Auto Parts requested that the trial court vacate the default judgment based on the "excusable neglect" provision of Civ.R. 60(B)(1) and the "catch-all" provision of Civ.R. 60(B)(5) due to (1) lack of proper service of the complaint, (2) its statutory agent's failure to forward

the complaint to Eagle Auto Parts after service and (3) Eagle Auto Parts' lack of notice that the complaint had been filed. On appeal, Eagle Auto Parts abandons its lack-of-proper-service argument, acknowledging that "service of process was perfected on March 26, 2020," and argues only that the trial court abused its discretion in denying Eagle Auto Parts' motion to vacate default judgment due to its excusable neglect.

{¶ 48} Eagle Auto Parts bases its excusable neglect argument on Calta's failure to advise Eagle Auto Parts that she was no longer at 1360 SOM Center Road, Calta's failure to advise Eagle Auto Parts that she had left private practice and no longer intended to serve as its statutory agent and the failure of Calta, the Diemert law firm or whomever actually received the summons and complaint at 1360 SOM Center Road to notify Eagle Auto Parts that it had received the summons and complaint. Eagle Auto Parts further asserts that its failure to answer the complaint should have been deemed excusable neglect because upon its "first notice" of the case, i.e., its receipt of the default judgment mailed to Eagle Auto Parts' auto parts storage warehouse at 4063 East 116th Street, Eagle Auto Parts "immediately engaged legal counsel" and "filed its Civ.R. 60(B) motion."

{¶ 49} In response, Twymon asserts that Calta's actions as its statutory agent (and as an attorney) were imputed to Eagle Auto Parts and that the trial court properly denied Eagle Auto Parts' motion to vacate because Eagle Auto Parts "present[ed] no evidence to rebut proper service" and "did not present an affidavit

from Calta alleging that her failure to notify [Eagle Auto Parts] of the complaint was excusable neglect."

{¶ 50} As the Ohio Supreme Court has recognized, "'excusable neglect' is an elusive concept which has been difficult to define and to apply." *Kay*, 76 Ohio St.3d at 20, 665 N.E.2d 1102. It "'must be construed in keeping with the proposition that Civ.R. 60(B)(1) is a remedial rule to be liberally construed, while bearing in mind that Civ.R. 60(B) constitutes an attempt to "strike a proper balance between the conflicting principles that litigation must be brought to an end and justice should be done."'" *Russell v. McDonalds Inc.*, 8th Dist. Cuyahoga No. 109112, 2020-Ohio-4300, ¶ 21, quoting *Colley*, 64 Ohio St.2d at 248, 416 N.E.2d 605, quoting 11 Wright & Miller, *Federal Practice & Procedure* 140, Section 2851.

{¶ 51} This court recently described "excusable neglect" as follows:

> Excusable neglect has been defined in the negative. The inaction of a defendant is not excusable neglect if it can be labeled as a "complete disregard for the judicial system." *Kay v. Marc Glassman*, 76 Ohio St.3d 18, 20, 665 N.E.2d 1102 (1996). Cases finding excusable neglect typically involve special circumstances that justify the neglect. *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 10th Dist. Franklin No. 14AP-640, 2015-Ohio-1368, 31 N.E.3d 190, ¶ 13. Neglectful conduct is not excusable if the party seeking relief could have prevented the circumstances from occurring. *Stuller v. Price*, 10th Dist. Franklin No. 02AP-29, 2003-Ohio-583, ¶ 52. While special or unusual circumstances can justify neglect, if a party "could have controlled or guarded against the happening of the special or unusual circumstance, the neglect is not excusable." *Vanest v. Pillsbury Co.*, 124 Ohio App.3d 525, 706 N.E.2d 825 (4th Dist.1997).

*Delitoy v. I. Stylez Hair & Nails Design, Inc.*, 8th Dist. Cuyahoga No. 108833, 2020-Ohio-3370, ¶ 18. The determination of whether excusable neglect has

occurred "'must of necessity take into consideration all the surrounding facts and circumstances.'" *Griffey v. Rajan*, 33 Ohio St.3d 75, 79, 514 N.E.2d 1122 (1987), quoting *Colley* at 249.

{¶ 52} Excusable neglect may exist when a party has "neither actual notice nor knowledge of the lawsuit." *Rodgers v. Rocky River*, 8th Dist. Cuyahoga No. 108059, 2019-Ohio-2006, ¶ 11; *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 2015-Ohio-1368, 31 N.E.3d 190, ¶ 15 (10th Dist.). Courts have also found excusable neglect where a failure to answer was due to a failure to forward, or other mishandling of, a complaint. *See, e.g., Clark v. Marc Glassman, Inc.,* 8th Dist. Cuyahoga No. 78640, 2001 Ohio App. LEXIS 3826, 6-7, 10-11 (Aug. 30, 2001) (defendant established excusable neglect where employee failed to forward complaint to an appropriate corporate officer for response); *Hopkins v. Quality Chevrolet, Inc.*, 79 Ohio App.3d 578, 582-583, 607 N.E.2d 914 (4th Dist.1992) ("relief from default judgment may be granted on the basis of excusable neglect when service is properly made on a corporation but a corporate employee fails to forward the summons and complaint to the appropriate person"); *Perry v. Gen. Motors Corp.*, 113 Ohio App.3d 318, 319, 321-324, 680 N.E.2d 1069 (10th Dist.1996) (excusable neglect where corporate employee inadvertently sent the summons and complaint to payroll department rather than to corporate counsel, preventing response to complaint prior to entry of default judgment); *Sycamore Messenger, Inc. v. Cattle Barons, Inc.*, 31 Ohio App.3d 196, 197, 509 N.E.2d 977 (1st Dist.1986) (excusable neglect found where service was properly made but defendant's

bookkeeper failed to forward the summons and complaint to the appropriate person and was subsequently fired); *see also Keaton v. Purchase Plus Buyers Group*, 145 Ohio App.3d 796, 803-805, 764 N.E.2d 1043 (4th Dist.2001) (remanding case for an evidentiary hearing on the issue of excusable neglect where certified mail receipt "ostensibly signed by the statutory agent" indicated that service of the summons and complaint was made on company's statutory agent but there was no affidavit from the former statutory agent to indicate whether he signed for service and, if so, what happened to the complaint after receipt).

{¶ 53} "[A]n agent's failure to appropriately forward a complaint does not," however, "automatically constitute excusable neglect." *Treasurer of Lucas Cty. v. Mt. Airy Invs. Ltd.*, 6th Dist. Lucas No. L-18-1254, 2019-Ohio-3932, ¶ 27, citing *T.S. Expediting Servs., Inc. v. Mexican Industries, Inc.*, 6th Dist. Wood No. WD-01-060, 2002-Ohio-2268, ¶ 18. Where a failure to answer a complaint is the result of a party's "[i]nsufficient or negligent internal procedures" or the party could have otherwise "controlled or guarded against" the circumstances that led to a party's failure to answer, courts have often declined to find excusable neglect. *See, e.g., Middleton v. Luna's Rest. & Deli, LLC*, 5th Dist. Stark No. 2011 CA 00004, 2011-Ohio-4388, ¶ 31, citing *Laking Trucking, Inc. v. Coastal Tank Lines, Inc.*, 3d Dist. Allen No. 1-83-3, 1984 Ohio App. LEXIS 8902, 8-11 (Feb. 9, 1984) (summons and complaint received in a corporate mail room but inexplicably "lost or mislaid" after being handled by mailroom employees did not constitute excusable neglect); *Meyer v. GMAC Mortg.*, 10th Dist. Franklin No. 06AP-877, 2007-Ohio-5009, ¶ 17-19

(defendant did not establish excusable neglect based on loan center employees' failure to forward complaint to appropriate corporate department where there was "no indication as to what actions employees at the loan center took upon receipt of the complaint"); *John W. Judge Co. v. United States Freight, LLC*, 2d Dist. Montgomery No. 27708, 2018-Ohio-2658, ¶ 2-6, 29 (failure to answer was not excusable neglect where mother of defendant's owner, who understood and spoke little English and had little knowledge of the legal system, signed for certified mail receipt served at address of defendant's statutory agent and thereafter failed to provide the complaint to anyone involved in the business).

{¶ 54} Likewise, a party's failure to answer a complaint is not excusable neglect "when it is a result of the party's own 'carelessness, inattention, or willful disregard of the process of the court.'" *Russell*, 2020-Ohio-4300, at ¶ 15, 22, 25-28 (defendant's failure to respond to lawsuit was not excusable neglect where summons and complaint were served by certified mail in care of the owner at business location where incident occurred, defendant acknowledged that it lacked a procedure for dealing with important court documents and subsequent communications from the court were also ignored), quoting *Emery v. Smith*, 5th Dist. Stark Nos. 2005CA00051 and 2005CA00098, 2005-Ohio-5526, ¶ 16.

{¶ 55} This is not a case in which Eagle Auto Parts' failure to answer the complaint can be appropriately characterized as a complete disregard for the judicial system" or a result of its own "'carelessness, inattention, or willful disregard of the process of the court.'" *Kay*, 76 Ohio St.3d at 20, 665 N.E.2d 1102; *Russell* at ¶ 22,

quoting *Emery* at ¶ 16. "Where timely relief is sought from a default judgment and the movant has a meritorious defense," the Ohio Supreme Court has stated that "doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." *GTE*, 47 Ohio St.2d 146, 351 N.E.2d 113, at paragraph three of the syllabus.

{¶ 56} Following careful review of the record in this case, considering all of the operative facts alleged by Eagle Auto Parts and the surrounding circumstances, and being mindful that courts must find a proper balance between the principles that litigation must be brought to an end and that justice should be done, we conclude that special circumstances exist in this case establishing excusable neglect on the part of Eagle Auto Parts and that the trial court abused its discretion in denying Eagle Auto Parts' motion to vacate default judgment.

{¶ 57} Based on the operative facts set forth in Eagle Auto Parts' motion to vacate default judgment and Agnello's supporting affidavit (and as further explained at the hearing on Eagle Auto Parts' motion to vacate), Eagle Auto Parts first learned of Twymon's lawsuit when it received the trial court's December 17, 2020 default judgment entry. Although Eagle Auto Parts has acknowledged that service was perfected by certified mail delivery of the summons and complaint directed to Calta (as its statutory agent) at 1360 SOM Center Road, it presented evidence that the summons and complaint were never forwarded to Eagle Auto Parts and that Eagle Auto Parts was not otherwise notified that a lawsuit had been filed against it.

{¶ 58} Although it was Eagle Auto Parts' responsibility to maintain a valid statutory agent designated to receive service of process, there is nothing in the record to indicate that Calta (or anyone else) had notified Eagle Auto Parts prior to service of the summons and complaint in this case that Calta was no longer working at 1360 SOM Center Road, that Calta had left private practice or that Calta otherwise no longer intended to serve as its statutory agent. According to Ohio Secretary of State records, Calta did not resign as Eagle Auto Parts' statutory agent prior to the service of the summons and complaint in this case. Agnello averred in his affidavit that he learned that Calta was "no longer employed as an attorney for the Diemert Law firm" only when he "googl[ed] her name" after receiving the default judgment entry.

{¶ 59} Twymon asserts that, to establish its entitlement to relief under Civ.R. 60(B)(1), Eagle Auto Parts needed to present an affidavit from Calta "alleging that her failure to notify [Eagle Auto Parts] of the complaint in this case is excusable neglect" and that the trial court, therefore, properly denied Eagle's motion to vacate default judgment. We disagree. Under the particular facts and circumstances here, we do not believe the lack of an affidavit from Calta was fatal to Eagle Auto Parts' request for relief from judgment.

{¶ 60} First, although Eagle Auto Parts acknowledges that service was perfected by certified mail delivery of the summons and complaint to Calta at 1360 SOM Center Road, there is nothing in the record to indicate that Calta ever personally received the summons and complaint. It is undisputed that, at the time

the summons and complaint were served at 1360 SOM Center Road — the address of the Diemert law firm — Calta was no longer working there. There is no indication in the record that anyone from the Diemert law firm (or anyone else) forwarded the summons and complaint to Calta.[10]

{¶ 61} Although an affidavit from Calta could have perhaps shed light on why Calta was still listed as the statutory agent for Eagle Auto Parts at that address on March 26, 2020 — i.e., why she did not resign as statutory agent for Eagle Auto Parts or change her address when she left 1360 SOM Center Road — given that Calta was no longer working at 1360 SOM Center Road at the time the summons and complaint was served at that address, Calta would have been unable to explain (1) why someone signed for certified mail directed to her as statutory agent for Eagle Auto Parts at that address, (2) who signed for the summons and complaint, (3) what happened to the summons and complaint after it was received at 1360 SOM Center Road or (4) why it was not forwarded to Eagle Auto Parts.[11] Eagle Auto Parts set forth sufficient operative facts explaining why it did not receive and timely answer the complaint.

---

[10] Eagle Auto Parts' counsel represented at the hearing on the motion to vacate that, in an attempt to reach Calta, he had also contacted the law office on SOM Center Road out of which Calta was last believed to have worked and that they had no forwarding information for Calta.

[11] It is impossible to tell from the certified mail receipt who signed for the summons and complaint at 1360 SOM Center Road; the name of the individual who signed for the summons and complaint was not recorded on the return receipt, and the signature on the return receipt is illegible. Accordingly, Eagle Auto Parts would have had no way of reaching out to that individual to determine what happened to the summons and complaint after it was served.

{¶ 62} Moreover, although the trial court issued numerous orders in this case before the default hearing, including four orders scheduling the default hearing, the record does not reflect that the trial court sent any of those orders to Eagle Auto Parts – either directly to Eagle Auto Parts or to Eagle Auto Parts in care of Calta as its statutory agent. As noted above, the trial court's docket reflects that the orders were only sent to Twymon or his counsel via "e-filing service email."

{¶ 63} And although the trial court ordered Twymon to send a letter to Eagle Auto Parts by certified mail, notifying Eagle Auto Parts of the default hearing at least seven days prior to the hearing date, Twymon only sent the letter to Calta, as statutory agent for Eagle Auto Parts, at 1360 SOM Center Road; it did not send the letter directly to Eagle Auto Parts at the address listed in the complaint. There is no indication in the record that that letter to Calta was, in fact, delivered to 1360 SOM Center Road prior to the date of the default hearing, i.e., there is no return receipt in the record. The record reflects that when the trial court did send notice to directly Eagle Auto Parts, i.e., when it sent a copy of the default judgment on December 17, 2020 to Eagle Auto Parts at its 4063 East 116th Street address, Eagle Auto Parts received it and acted promptly in response to it.

**Timing of Motion for Default Judgment**

{¶ 64} Furthermore, an issue exists in this case as to whether the trial court had authority to grant Twymon's motion for default judgment. Civ.R. 55(A) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party

entitled to a judgment by default shall apply in writing or orally to the court therefore" and that a default judgment may then be entered against the defaulting party (provided certain conditions are met). However, the rule does not authorize the filing of a motion for default judgment prior to an actual default. *See, e.g., Bank of Am., N.A. v. Shultz*, 2d Dist. Clark No. 2012-CA-70, 2013-Ohio-2567, ¶ 12-14 ("The default-judgment rule does not provide for a default-judgment motion to be filed prematurely."); *Hartley v. Clearview Equine Veterinary Servs.*, 6th Dist. Lucas No. L-04-1163, 2005-Ohio-799, ¶ 10 (Civ.R. 55(A) "does not provide for the filing of a motion for default prior to an actual default."); *Farakhan v. Wade*, 9th Dist. Summit No. 28813, 2018-Ohio-1170, ¶ 7 ("After a default arises, Civ.R. 55(A) permits the plaintiff to file a motion for default judgment and the trial court to grant the same. * * * However, Civ.R. 55(A) does not allow for the filing of a motion for default judgment before a default arises.").

{¶ 65} On March 26, 2020, when the summons and complaint were served on Calta as statutory agent for Eagle Auto Parts, the Ohio Supreme Court's COVID-19 tolling order was in effect. Pursuant to the tolling order, Eagle Auto Parts would have had 28 days in which to file an answer after the tolling period ended, i.e., 28 days after July 30, 2020.[12] *See In re Tolling of Time Requirements Imposed by*

---

[12] On its website, the Ohio Supreme Court set forth the following example as part of its "Tolling Legislation FAQs":

Q: HOW DOES TOLLING APPLY?

A: How tolling applies is fact dependent. The following examples of a defendant's answer are demonstrative: * * *

*Rules Promulgated by the Supreme Court & Use of Tech.*, 158 Ohio St.3d 1447, 2020-Ohio-1166, 141 N.E.3d 974.  However, Twymon's motion for default judgment was filed on July 21, 2020 — before the tolling period ended, before Eagle Auto Parts' answer was due and before any default occurred.

**{¶ 66}** This court has previously stated that "[a] motion for default judgment filed prior to an actual default must be considered a nullity and denied." *Jerninghan v. Rini*, 8th Dist. Cuyahoga No. 66764, 1995 Ohio App. LEXIS 573, 6 (Feb. 16, 1995); *see also Smith v. Ramsey*, 7th Dist. Noble No. 05 NO 329, 2006-Ohio-4859, ¶ 7 (same); *Shultz* at ¶ 13-14 (motion for default filed prematurely is "void"); *Hartley* at ¶ 10-11 (trial court properly vacated default judgment where the judgment was void for lack of jurisdiction and motion for default judgment was filed two days prior to any actual default); *Farakhan* at ¶ 7-9 (landlord's motion for default judgment against tenant was "filed prematurely and was a nullity, which

---

Example 2 – Defendant is served on March 23, 2020: Normally the defendant's answer would be due 28 days thereafter, on April 20, 2020. However, because this deadline falls within the emergency period, it is tolled. * * * Because the emergency period was in effect when the defendant was served, the entirety of the 28 days is tolled, meaning the once the emergency period ends, the defendant will have 28 days left to file an answer.

https://www.supremecourt.ohio.gov/tolling (accessed May 26, 2022).

Pursuant to the tolling order, the tolling period extended until July 30, 2020 or the date the state of emergency ended, whichever was sooner. *In re Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Court & Use of Tech.*, 158 Ohio St.3d 1447, 2020-Ohio-1166, 141 N.E.3d 974. Executive Order 2020-01D, declaring a state of emergency, was rescinded and the declaration of emergency ended on June 18, 2021. *See* Executive Order 2021-08D. Accordingly, the tolling period extended through July 30, 2020.

should have been denied by the trial court" where it was filed 28 days after the date of filing the complaint instead of 28 days after the date of service of the summons and complaint, such that "there was no actual default under Civ.R. 55(A)").

{¶ 67} Accordingly, following a thorough consideration of the record, we conclude that the trial court abused its discretion in denying Eagle Auto Parts' motion to vacate default judgment. Eagle Auto Parts' assignments of error are sustained.

{¶ 68} Judgment reversed, vacated, and case remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
LISA B. FORBES, J., CONCUR